# TRAUB LIEBERMAN

Mid-Westchester Executive Park | 7 Skyline Drive | Hawthorne, NY 10532
DIRECT (914) 586-7009 | MAIN (914) 347-2600 | FAX (914) 347-8898

Lisa L. Shrewsberry | Partner | lshrewsberry@tlsslaw.com

November 18, 2022

**VIA ECF**

Daniel L. Rashbaum, Esq.
Marcus Neiman Rashbaum & Pineiro LLP
One Biscayne Tower
2 S. Biscayne Boulevard, Suite 2530
Miami, Florida 33131

   Re: ***Loren M. Ridinger, individually and on behalf of the Estate of James Ridinger, and Milagro Yacht Charters LLC v. Ralph K. Stone, Rachel L. Gould and Meister Seelig & Fein LLP***
     Docket No.: 22-cv-09082-VM

Dear Mr. Rashbaum:

  We represent defendants Ralph K. Stone, Rachel L. Gould and Meister Seelig & Fein LLP in the above-referenced matter. We write pursuant to Rule II(B)(1) of Judge Marrero's Individual Rules, to set forth the bases for dismissal of the complaint in the above-referenced matter, pursuant to Fed. R. Civ. P. 12(b)(6).

  Plaintiff Loren Ridinger brings this action on behalf of herself, and on behalf of the Estate of James Ridinger. However, it is clearly alleged that no personal representative has yet been appointed in the Estate of James Ridinger, who is alleged in the complaint to have passed away on August 31, 2022. Compl. ¶8. Moreover, plaintiff Milagro Yacht Charters, LLC ("Milagro") is alleged to be a limited liability company, of which James Ridinger was the managing member and majority owner. Compl. ¶10. Plaintiff Loren Ridinger was one of six minority owners of Milagro, although the remaining five minority owners are not identified.[1] Compl. ¶10.

  The allegations in the complaint involve a 116 foot yacht named Utopia II ("the yacht"). It is alleged that the yacht was purchased by a company owned by Loren and James Ridinger in 1999, and its ownership was ultimately transferred to Milagro. Compl. ¶¶16, 18. It is alleged that in early 2016, the Ridingers were considering donating the yacht to AMIKids, Inc., a tax-exempt charitable organization, in order to claim "a charitable deduction on their taxes." Compl. ¶¶21-23.

---

[1] It should be noted that the complaint is silent with respect to the citizenship of the five unidentified minority owners of plaintiff Milagro Yacht Charters, LLC, despite the fact that plaintiffs assert that this Court has jurisdiction over this matter due to the diversity of citizenship between plaintiffs and defendants. Compl. ¶14. *See Agility Logistics Corp. v. Elegant USA, LLC,* 2009 U.S. Dist. LEXIS 88561 (S.D.N.Y. 2009).

NEW YORK
NEW JERSEY
ILLINOIS
FLORIDA
CONNECTICUT
CALIFORNIA

www.traublieberman.com

The complaint alleges that the Ridingers retained the law firm in or about February 2016. Compl. ¶24. In March 2016, the law firm advised that such a donation of personal property to a charitable organization was subject to a three year "look-back" period, which could affect the amount of a charitable tax deduction if the item donated was sold by the donee within three years of donation. Compl. ¶28. In other words, if the amount of the charitable deduction in 2016 was $4.93 million (the purported value of the yacht pursuant to an appraisal commissioned by Milagro in March 2016),[2] and the donee sold the yacht within three years for an amount less than $4.93 million, then the IRS has the right to look back, and amend the amount of the charitable tax deduction to the lesser sale price. Compl. ¶28.

In order to secure the value of the charitable deduction, the law firm proposed the donation of the yacht to Veterans, Inc., which would then immediately sell the yacht to an entity by the name of RR Skye Holdings, LLC. Compl. ¶¶29-36. Such transaction was to serve to lock in the amount of the charitable deduction in 2016, provide Veterans, Inc. with a donation to aid in its mission to support veterans through use of the yacht and (as allowed by the IRS) provide the Ridingers with part-time access to use of the yacht in exchange for payment of some of its operating costs. Compl. ¶¶30-37.

Plaintiffs allege that they followed the advice of the law firm, and that in May 2016 Milagro donated the yacht to Veterans, Inc. (an organization with which the law firm had a pre-existing relationship), which immediately sold the yacht to RR Skye Holdings, LLC. Compl. ¶¶35-36. Milagro then claimed a charitable deduction of $4.93 million on its 2016 tax return. Compl. ¶38. In 2017, however, it was determined that the yacht was donated by plaintiffs in a condition needing approximately $4 million in maintenance and repairs (pursuant to a marine survey not disclosed to the appraiser, the law firm or the donee, and which reduced the actual value of the yacht from the amount reflected on Milagro's appraisal), and was actually worth approximately $1 million at the time of donation. Accordingly, and as a matter of necessity, the yacht was sold to a third party for $1.3 million in September 2017. Compl. ¶40.

In light of the foregoing facts, the IRS also became aware of the actual value of the yacht at the time of the donation, and disallowed the amount of the charitable deduction accordingly. Compl. ¶¶41-42. Incredibly, plaintiffs now seek to concoct a legal malpractice claim from such facts, seeking to recover the "lost" charitable deduction, and seeking to be otherwise reimbursed for the expenses caused by the misrepresented value of the yacht.

The claims asserted against the law firm, for legal legal malpractice, breach of fiduciary duty, and vicarious liability for same, are all time-barred. Under New York law, the statute of limitations for an action to recover damages for legal malpractice is three years. CPLR 214(6). The limitations period begins to accrue "not when the plaintiff discovers the legal malpractice, but when the malpractice is committed." *De Carlo v. Ratner*, 204 F. Supp.2d 630, 635 (S.D.N.Y. 2002); *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 166, 726 N.Y.S.2d 365 (2001) (an action to recover damages for legal malpractice accrues when the malpractice is committed not when the client discovered it); *Boyd v. Gering, Gross & Gross*, 226 A.D.2d 489, 489, 641 N.Y.S.2d 108 (2d Dep't

---

[2] Such appraisal clearly states therein that it is a "Yacht Appraisal Report Only," and is "not intended as a survey of the vessel."

1996) (the law is well settled that an action to recover damages for legal malpractice accrues when the malpractice is committed). In addition, under New York law, a claim for breach of fiduciary duty that is "based on the same alleged conduct amounting to legal malpractice" is subject to the same three-year statute of limitations period as the legal malpractice claim. *Dozier v. Willkie Farr & Gallagher LLP*, 2011 U.S. Dist. LEXIS 50687 (S.D.N.Y. 2011); *Morson v. Kreindler & Kreindler, LLP*, 814 F.Supp.2d 220, 227 (E.D.N.Y. 2011) (concluding that CPLR 214(6) applied to breach of fiduciary duty claim against defendant attorneys because the claims were based on the same alleged conduct that formed plaintiff's legal malpractice claim). When a plaintiff brings a breach of fiduciary duty claim that arises from the same facts as a time-barred legal malpractice claim, the fiduciary duty claim must also be dismissed as time-barred. *Hadda v. Lissner & Lissner LLP*, 99 A.D.3d 476, 477, 952 N.Y.S.2d 126 (1st Dep't 2012) (dismissing breach of fiduciary duty claim as time-barred because it was duplicative of time-barred legal malpractice claim); *6645 Owners Corp. v. GMO Realty Corp.*, 306 A.D.2d 97, 98, 762 N.Y.S.2d 60 (1st Dep't 2003) (finding a breach of fiduciary duty claim barred by the three-year statute of limitations because it was not "separate and distinct from the alleged legal malpractice").

Plaintiffs' legal malpractice claim is clearly alleged upon legal advice rendered in 2016. The complaint makes clear that the transaction at issue is the donation of the yacht, which was completed in May 2016. Compl. ¶35. Moreover, the causes of action for legal malpractice and breach of fiduciary duty both attempt to assert that the law firm breached a duty of loyalty to plaintiffs, upon the argument that the law firm had a pre-existing relationship with Veterans, Inc. Compl. ¶¶50, 54, 59-60. Accordingly, both causes of action fall within the above analysis (as does the claim of vicarious liability). Any potential claim for legal malpractice or breach of fiduciary duty, therefore, has been time-barred since 2019, and should be dismissed.

Additionally, the complaint clearly alleges that no personal representative has yet been appointed in the Estate of James Ridinger, and that James Ridinger was the managing member and majority owner of Milagro. Compl. ¶¶ 8, 10. Loren Ridinger, therefore, lacks the capacity to bring this action on behalf of the Estate of James Ridinger. Further, no authority has been asserted for plaintiff Milagro to bring this action, and given that James Ridinger is alleged to have been the managing member and majority owner of Milagro, no authority could be established without a personal representative of his estate. Capacity to sue as a representative of an estate is to be determined by the law of the state in which the district court sits. Fed. R. Civ. P. 17(b). Under the law of New York, a claim for damages may be brought on behalf of an estate only by a personal representative who has received letters from a court to administer the estate. New York Est. Powers & Trusts Law §§1-2.13, 11-3.2(b); *Stallsworth v. Stallsworth*, 138 A.D.3d 1102, 30 N.Y.S.3d 661 (2d Dep't 2016); *Schoeps v. Andrew Lloyd Weber Art Found.*, 66 A.D.3d 137, 884 N.Y.S.2d 396 (1st Dep't 2009). As Loren Ridinger admittedly has not received court authority to act on behalf of the Estate of James Ridinger, any claims brought in such capacity, as well as claims purportedly brought on behalf of James Ridinger as the managing member of Milagro, should be dismissed, because of Loren Ridinger's lack of capacity to bring same.

              Respectfully submitted,

              Lisa L. Shrewsberry

cc:  Hon. Victor Marrero (via facsimile)