

www.mnrlawfirm.com

December 2, 2022

**Via ECF**

Lisa L. Shrewsberry, Esq.
Traub Lieberman Straus & Shrewsberry LLP
Mid-Westchester Executive Park
Seven Skyline Dr.
Hawthorne, NY 10532

    RE: *Ridinger, et al. v. Stone, et al.*, Case No. 2022-CV-09082-VM

Dear Ms. Shrewsberry,

   As you know, we represent Plaintiffs Loren M. Ridinger, individually and on behalf of the Estate of James Ridinger, and Milagro Yacht Charters, LLC ("Milagro") (together, "Plaintiffs") in the above-referenced matter. Pursuant to Rule II(B) of the Individual Practices of United States District Judge Victor Marrero, we write this letter in response to the letter you submitted on behalf of Defendants, dated November 18, 2022 [D.E. 15]. As set forth herein, Plaintiffs intend to amend the Complaint with supplemental, clarifying allegations that demonstrate why the claimed bases for dismissal outlined in the Defendants' letter are incorrect or are no longer germane.

   As an initial matter, Defendants' letter observes that the Complaint is silent as to the citizenship of Milagro's minority owners. This observation is correct, but will be moot, because Plaintiffs intend to drop Milagro as a Plaintiff in this case. Separately, Defendants' letter argues that Plaintiff Loren M. Ridinger lacks the capacity to bring an action on behalf of James Ridinger's Estate. This argument also is now moot, as Ms. Ridinger was appointed personal representative of the Estate on November 23, 2022. Defendants' remaining arguments relate to the timeliness of Plaintiffs' claims, and they are wrong for the following reasons.

   *First*, Defendants are wrong about when the three-year statute of limitations for malpractice accrued because Defendants misstate when Plaintiffs suffered an "actionable injury." "A legal malpractice claim accrues when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court." *Flintlock Constr. Servs., LLC v. Rubin, Fiorella & Friedman, LLP*, 188 A.D.3d 530, 531 (1st Dep't 2020) (internal cites and quotes omitted). "In most cases, this accrual time is measured from the day an actionable injury occurs" or "when the damages are sufficiently calculable." *Id.*(damages were sufficiently calculable "when the jury rendered its verdict"). New York courts routinely hold that legal malpractice claims are not ripe, and therefore cannot be maintained, until the plaintiff has incurred actual and ascertainable damages. In other words, until that point, a plaintiff *cannot* "obtain relief in court" because he or she cannot adequately allege damages (or, for that matter, that a defendant lawyer had *caused* such damages). That is why, as one Court in this District has expressed, "[l]ogic dictates that a legal malpractice claim may not be asserted until the matter on which the claim is based has been concluded."

MIAMI OFFICE
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530, Miami 33131
P • 305-400-4260 | F • 866-780-8355

FORT LAUDERDALE OFFICE
One Financial Plaza
100 Southeast Third Avenue, Suite 805, Ft Lauderdale 33394
P • 954-462-1200 | F • 866-780-8355

*Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 214 (S.D.N.Y. 2010); *see also Henkel v. Wagner*, 2013 WL 12084503, *7 (S.D.N.Y. Mar. 18, 2013) (dismissing malpractice claim as premature because plaintiff had not yet suffered any actual damages given the pendency of an appeal that would determine the effect, if any, of the alleged malpractice) (compiling cases).

In this case, Plaintiffs first learned that the Utopia II donation was a focus of the IRS audit during IRS witness interviews in the summer of 2020. The IRS issued the Ridingers notices of deficiency in July 2021. This lawsuit was filed in October 2022, just months after the Ridingers settled with the IRS in June 2022 (which settlement was entered by the Tax Court in July 2022). With this timeline as context, the very earliest that Plaintiffs incurred actual and ascertainable damages—and indeed, the earliest they knew there was a potential issue with the donation and that there was even a *possibility* they would sustain damages of any kind whatsoever—was in 2020. That is the first point at which Plaintiffs incurred defense costs that conceivably were attributable to Defendants' malpractice—although, of course, the full magnitude of their damages was not known until later.

*Second*, even if the limitations period on the malpractice claim otherwise would have accrued in 2016, which Plaintiffs submit is not the case for the above reasons, (1) Defendants will be equitably estopped from asserting a limitations defense because of their wrongdoing, and (2) in any event, the continuous representation doctrine tolled the limitations period. Under New York law, equitable estoppel precludes a defendant from raising the statute of limitations as a defense "where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." *General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 128 (1966); *see also Erbe v. Lincoln Rochester Trust Co.*, 13 A.D.2d 211, 214–15 (4th Dep't 1961) (reversing dismissal on limitations grounds of a complaint alleging breach of fiduciary duty; because plaintiffs had alleged trustee-defendant's concealment of wrongdoing, trustee may be equitably estopped from relying upon the limitations and dismissal therefore was inappropriate).

Here, it was not until James Ridinger was interviewed by the IRS in January 2021 that Plaintiffs learned, for the first time, key details about Defendants' conduct after Utopia II had been donated and was no longer in Plaintiffs' possession—including, for example, that the yacht's intended donee (*i.e.*, Veterans) had ultimately received just $130,000 in the transaction. That was not only a mere fraction of the appraised value of the yacht ($4,930,000), it was just 10% of the amount Defendants ultimately sold the yacht for in September 2017 ($1,300,000). To this day, Plaintiffs *still* do not know what became of the proceeds, but it appears they went to Stone, Gould, or entities they are affiliated with. Defendants' affirmative wrongdoing is characterized by their concealment of these details about how they intended to, and then did, benefit *themselves* through this transaction, all while purporting to carry out the donation on behalf of Plaintiffs.[1] And it was these details about the mechanics of the transaction, which Plaintiffs did not know and had no way of learning given Defendants' concealment, that largely served as the basis for the IRS's assessment of fraud-based penalties against the Ridingers. If there ever was a scenario in which a party should be estopped from asserting a limitations defense, this is it.

Moreover, the continuous representation doctrine tolls the limitations period on a malpractice claim until the attorney's "ongoing representation is completed." *See Glamm v. Allen*, 57 N.Y.2d 87, 94 (1982).

---

[1] Defendants represented to Plaintiffs, before the donation, that Defendants would not be benefiting from the transaction in any way. Indeed, as alleged in the Complaint, Plaintiffs actually switched donees in part based on their discomfort stemming from Stone's stated concerns that the captain of Utopia II, who had recommended the initial donee, would be receiving a kick-back. *See* Compl. at ¶ 27. Yet, all the while Defendants were concealing their intent to benefit themselves, instead.

MIAMI OFFICE
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530, Miami 33131
P • 305-400-4260 | F • 866-780-8355

FORT LAUDERDALE OFFICE
One Financial Plaza
100 Southeast Third Avenue, Suite 805, Ft Lauderdale 33394
P • 954-462-1200 | F • 866-780-8355

Between February 2016 and March 2020, Stone provided legal advice to Plaintiffs on a range of different matters pursuant to a general retainer agreement, under which he received a monthly flat fee. The advice Stone rendered as to the donation of Utopia II in particular was part of a course of representation that also included advice as to Plaintiffs' donation of another yacht called "Utopia III" to another § 501(c) organization. The impetus for both donations was Plaintiffs' commissioning the construction of a new yacht called "Utopia IV" that, in Plaintiffs' view, would render the Utopia II and Utopia III redundant, and Plaintiffs planned to donate Utopia II first and then also dispose of Utopia III. Stone was aware of this plan,[2] and he assisted Plaintiffs in carrying it out. Therefore, it was not until Utopia III was donated in early 2020 that Stone's counsel on this matter was completed. *See Dyamm v. Cahill*, 730 F. Supp. 1245, 1264 (S.D.N.Y. 1990) (complaint's allegations were sufficient to toll the SOL because "the relationship it asserts is a continuous one involving professional advice about matters that are the same or related to the subject of the suit"). In fact, the representation lasted even longer, because Stone then was consulted by Plaintiffs' accountant in connection with the audit.

As to Plaintiffs' claim for breach of fiduciary duty, Defendants are wrong that it is merely duplicative of the malpractice claim, and they are wrong about the applicable limitations period. The fiduciary duty claim arises from fraudulent and self-interested conduct by Defendants, after the donation, that was independent from the flawed legal advice Defendants rendered (*i.e.*, that an immediate sale of Utopia II would lock in its donative value). *See Burke, Albright, Harter & Rzepka, LLP v. Sills*, 83 A.D.3d 1413, 1414 (4th Dep't 2011) (proposed counterclaims for breach of fiduciary duty and fraud were not duplicative of malpractice claim); *see also Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 558–59 (E.D.N.Y. 2015). It is that post-donation conduct, which was concealed from Plaintiffs, that largely gave rise to the IRS's fraud-based penalties—which were separate from its accuracy-based penalties. "[W]here," as here, "an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations under CPLR 213(8)."[3] *DiRaimondo v. Calhoun*, 131 A.D.3d 1194, 1196–97 (2d Dep't 2015). Additionally, when "a fiduciary relationship exists and there are colorable allegations of concealment, the doctrine of equitable estoppel may apply to toll the statute of limitations." *Matter of Watson*, 8 A.D.3d 1092, 1094 (4th Dep't 2004); *see also Nick v. Greenfield*, 299 A.D.2d 172, 173 (1st Dep't 2002).

Finally, Plaintiffs also intend to amend the Complaint to add a cause of action for fraud, which (like the breach of fiduciary duty claim) will not be duplicative of the malpractice claim. *See Mitschele v. Schultz*, 36 A.D.3d 249, 254–56 (1st Dep't 2006) (finding fraud and malpractice claims distinct and independent, reasoning in part that the alleged malpractice "constitute[d] merely a portion of the factual predicate for the fraud claim," which went beyond merely an error of professional judgment: "[D]efendants' alleged fraud is not simply the failure to disclose the malpractice based upon accounting errors. Rather, defendants are alleged to have perpetrated a fraud on plaintiff from the time they were retained to provide accounting services, in failing to disclose their concern with protecting the interests of another entity . . . .").

---

[2] Stone's written proposal to Plaintiffs reflected this understanding; in fact, he claimed one of the benefits of proceeding with his proposed strategy was that "You would also have the right to offer the use of Utopia II to a purchaser of Utopia III prior to the delivery of Utopia IV."

[3] CPLR 213(8) provides, in relevant part, that "the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."

MIAMI OFFICE
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530, Miami 33131
P • 305-400-4260 | F • 866-780-8355

FORT LAUDERDALE OFFICE
One Financial Plaza
100 Southeast Third Avenue, Suite 805, Ft Lauderdale 33394
P • 954-462-1200 | F • 866-780-8355

For the above reasons, and upon Plaintiffs' amendment of the Complaint to incorporate the supplemental and/or clarifying facts discussed above, Defendants are wrong that dismissal of this action is, or will be, warranted.

Respectfully submitted,

Jeffrey A. Neiman, Esq.

cc: Honorable Victor Marrero

MIAMI OFFICE
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530, Miami 33131
P • 305-400-4260 | F • 866-780-8355

FORT LAUDERDALE OFFICE
One Financial Plaza
100 Southeast Third Avenue, Suite 805, Ft Lauderdale 33394
P • 954-462-1200 | F • 866-780-8355