# EXHIBIT C

## FISCAL SPONSORSHIP AGREEMENT

This Fiscal Sponsorship Agreement (this "Agreement") is made by and between Veterans Inc. ("Grantor") and Killer Impact, Inc. ("Grantee") effective as of April 20, 2016 (the "Effective Date").

### RECITALS

A.  Grantor is a Massachusetts nonprofit charitable corporation located in Worcester, Massachusetts, qualified as exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code, as amended ("IRC").

B.  Grantee is a newly formed Delaware public benefit corporation located in New York, New York. Namely, without limiting or expanding the foregoing, the purpose of the Grantee is to (i) develop, finance and produce relevant, commercially viable, and engaging media content; (ii) provoke open dialogue, ignite awareness and encourage advocacy of cultural, environmental, and historical issues through artful storytelling; (iii) open minds while reaching the broadest audience possible; and (iv) provide training and a career launching opportunity to creative professionals who aim to have a career creating positive and constructive social impact for disadvantaged populations in the United States and around the world (the "Project").

C.  Grantee desires to have Grantor act as its fiscal sponsor for the purpose of soliciting and receiving grants, tax deductible contributions, and other revenues and distributing such funds to Grantee, to be used exclusively in support of the Project, subject to the terms and conditions set forth in this Agreement.

D.  Grantee seeks to enter into this Agreement with Grantor, whereby, as set forth herein, Grantor will receive contributions for Grantee and provide related support to the Project.

E.  Grantor has determined that the Project is consistent with its charitable and educational purposes and that acting as a fiscal sponsor to Grantee will further its charitable and educational goals. Therefore, Grantor wishes to provide fiscal sponsorship to Grantee, allowing Grantee to receive the benefits of Grantor's tax exempt status, to create a tax exempt fund designated for the Project, to receive outside tax exempt donations to this fund, and to distribute all funds to Grantee, subject to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:

1.  Incorporation of Recitals. The foregoing Recitals are incorporated as part of this Agreement.

2.  Term of Agreement. As of the Effective Date, Grantor shall assume fiscal sponsorship of Grantee, which sponsorship shall continue in effect unless and until terminated as provided herein.

3. <u>Creation of Fund and Services</u>. Grantor shall create a fund designated for the Project ("<u>Fund</u>"), and shall receive, tax exempt donations on behalf of Grantee. Grantor further agrees to grant to Grantee all money deposited to the Fund, less any Administrative Charge, as defined in Section 8 below (collectively, the "<u>Services</u>"). Other than the Services, the Grantor shall not render any other administrative or similar support services to the Grantee. All grant agreements, pledges, or other commitments with funding sources to support this Project via the Fund shall be executed by Grantor. Grantor will acknowledge all contributions to the Fund in writing and will provide regular financial reports to the Grantee as set forth in Section 9 below. Grantee understands that it is responsible for insurance, debts, tax reporting and any other liabilities in connection with the Project.

4. <u>Distribution of Funds</u>. Grantor shall disperse grant payments to Grantee in the amount equal to any and all money received for and on behalf of the Project, subject to the conditions of this Agreement. Within three (3) business days from the date on which contributions are deposited in the Fund, or after that period of days required for the deposit to clear in the Fund shall have elapsed, whichever is greater, the Grantee shall be entitled to draw on the Fund by delivering to Grantor a disbursement request setting forth the amount which Grantee wishes to draw and the purpose of the disbursement request. Grantor shall be entitled to reasonably request additional information necessary for disbursement of Project Funds.

5. <u>Ownership and Control of Project Funds</u>. Project Funds will be held by Grantor as a restricted fund for the purposes of the Project, segregated into one or more cost centers on Grantor's books. Grantee understands that all Project Funds are, and will be reported as, income to Grantor for tax purposes and in Grantor's financial statements, and that Grantor has full legal ownership of, and discretion and control over Grantee's administration, management and use of Project Funds.

   Grantee shall use Project Funds solely for the Project and Grantee shall repay to Grantor any portion of the amount granted which is not used for the Project. Any changes in the purposes of or activities of the Project must be approved in writing by Grantor before implementation.

6. <u>Fundraising</u>. Grantee may solicit gifts, contributions, and grants, for delivery to Grantor, which funds shall be used for the purposes of the Project. Grantor shall place all such gifts, contributions, grants, and other revenues received by Grantor and identified with the Project into the Fund (the "<u>Project Funds</u>"). Grantor shall be responsible for the processing, acknowledgment, and deposit of Project Funds in the Fund.

   All grant agreements, pledges or other commitments with funding sources to support the Project via Grantor's restricted fund shall be executed by Grantor. Grantor reserves the right not to accept any contribution the acceptance of which it believes, in its sole discretion, would be inconsistent with its charitable purposes or might compromise Grantor's tax-exempt status under Section 501(c)(3) of the IRC. Grantor will furnish charitable gift receipts to all contributors of Project Funds but assumes no responsibility for ensuring that contributions are tax-deductible to any particular donor.

7.  Performance of Charitable Purposes; Prohibited Activities. All of the assets received by Grantor under the terms of this Agreement shall be devoted to the purposes of Grantee, and Grantee shall use the grant solely for the Project.  Grantee shall not use any portion of Project Funds to participate or intervene in any political campaign on behalf of or in opposition to any candidate for public office, to induce or encourage violations of law or public policy, to cause any private inurement or improper private benefit to occur, or to take any other action inconsistent with IRC Section 501(c)(3).

8.  Sponsorship Charges: An administrative charge of ten percent (10%) on each incoming gift shall be deducted by Grantor to defray Grantor's costs of administering the Fund.

9.  Reporting. Grantee shall submit quarterly progress and expenditure reports to Grantor in addition to a full and complete annual report and a Project progress report. The initial report shall be submitted by Grantee no later than three (3) months following the Effective Date. The report shall describe the charitable programs conducted by the Grantee pursuant to this Agreement, and shall report on the Grantee's compliance with the terms of this Agreement. Grantor shall submit to Grantee, by the 1st day of the month following the close of each Project quarter, reports reflecting receipts and expenditures of Project Funds during the reporting period and the balance of Project Funds on hand at the close of the quarter.

10. Project Documentation. Grantee shall provide Grantor with its governing documents, a completed and filed IRS Form SS-4, and/or such other documentation as is requested by Grantor concerning its legal and tax status. Grantee shall notify Grantor prior to submitting an application for recognition of tax-exempt status under IRC Section 501(c)(3) and immediately upon any change in its legal or tax status.

11. Tax Reporting. Grantee shall be responsible for any tax reporting, tax compliance or tax liabilities arising out of, or in connection with, any payments made by Grantor to Grantee or to third parties on Grantee's behalf under this Agreement. Grantee shall consult with its own outside professional tax advisors to determine its obligations under the law.

12. Project Audit. Grantor, at any time during the term of this Agreement and at its sole discretion, may conduct an audit of the Project's activities. Such audits are intended to investigate and document that the Project is being operated in accordance with this Agreement, Grantor's exempt purposes, and all applicable laws. Grantee shall provide to Grantor full cooperation and adequate documentation in the event of an audit. This Section shall survive the termination of this Agreement for three (3) tax years.

13. Ownership of Project Intellectual Property.  With respect to any and all intellectual property developed by Grantee in connection with implementation of the Project, Grantee shall retain an exclusive right of ownership, including the exclusive right to obtain the entire

right, title and interest to such intellectual property.  For the purposes of this Agreement, intellectual property means all copyright rights, patent rights, trademark rights, trade secret rights, contract and licensing rights, and all other intellectual property rights as may now exist and/or hereafter come into existence and all applications therefor which are owned by Grantee.

14. <u>Project Material: Tangible and Intellectual Property</u>.  Unless otherwise agreed or stated in any applicable grant or funding agreement, any tangible or intangible property, including intellectual property, such as copyrights, created or obtained by the Project using Project Funds shall be considered to be charitable in nature and shall not be used for any private purpose, including but not limited to the private inurement of the  Project, any individual or any non-charitable entity now existing or heretofore established.  This Section 14 shall survive the termination of this Agreement.

15. <u>Indemnification</u>. Grantee shall, to the fullest extent permitted  by  law, defend,  indemnify  and hold harmless Grantor, its officers, trustees, employees and agents,  from  and  against any and all claims, liabilities, losses and expenses (including reasonable attorneys' fees), directly, indirectly, wholly or partially arising from or in connection with any  act  or omission of Grantee, its officers, directors, trustees, members, employees, agents and representatives, in soliciting, accepting, expending or applying Project Funds or in carrying out its operations or the Project. This Section 15 shall survive the termination of this Agreement.

16. <u>Termination</u>. This Agreement shall terminate upon the earlier of (a) determination, in Grantor's sole discretion, that the objectives of Grantee can no longer reasonably be accomplished by Grantor, or (b) 30 days' written notice by either party to the non-terminating party.

17. <u>Relationship of Parties</u>. This Agreement shall not be deemed to create any relationship of agency, partnership or joint venture between the parties hereto.  Grantee is not authorized   to make any binding commitments, either express or implied, to any party on behalf of Grantor, and shall not make any representations otherwise. In addition, nothing in this Agreement shall be interpreted or construed to create any employer/employee relationship between Grantor and any of Grantee's representatives, staff or volunteers.

18. <u>Miscellaneous</u>. In the event of any controversy, claim, or dispute between the parties arising out of or related to this Agreement, or the alleged breach thereof, the prevailing party shall, in addition to any other relief, be entitled to recover its reasonable attorneys' fees and reasonable actual out-of-pocket costs of sustaining its position.  Each provision of this Agreement shall be separately enforceable, and the invalidity of one provision shall not affect the validity or enforceability of any other provision.  This Agreement shall be interpreted and construed in accordance with the laws of the Commonwealth of Massachusetts applicable to contracts to be performed entirely within such State. Time is of the essence of this Agreement and of each and every provision hereof.  The failure of Grantor to exercise any of its rights under this Agreement shall not be deemed a waiver of such rights.

19. Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which, taken together, shall constitute one and the same instrument.

20. Entire Agreement. This Agreement constitutes the only agreement, and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof. This Agreement may not be amended or modified, except in a writing signed by all parties to this Agreement.

*[Signatures appear on the following pages.]*

IN WITNESS WHEREOF, the parties have executed this Fiscal Sponsorship Agreement as of the Effective Date.

**GRANTOR:**

VETERANS INC.

By: _____
Name:   Vincent J. Perrone
Title:    President

**GRANTEE:**

KILLER IMPACT, INC.

By: _____
Name:   Ralph K. Stone
Title:    Secretary