UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
LOREN M. RIDINGER, individually and on         22-cv-09082-VM
behalf of the Estate of James Ridinger,

                              Plaintiff,

     -against-

RALPH K. STONE, RACHEL L. GOULD and
MEISTER SEELIG & FEIN LLP,

                             Defendants.

------------------------------------------------------------------X

**MEMORANDUM OF LAW BY DEFENDANTS IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Of Counsel:
  Lisa L. Shrewsberry, Esq.

**TRAUB LIEBERMAN STRAUS &
SHREWSBERRY LLP**
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .............................................................................................................1

ARGUMENT ..................................................................................................................................6

      POINT I –     STANDARD OF REVIEW .......................................................................6

      POINT II –    THE CLAIMS CONTAINED IN THE COMPLAINT
                           ARE TIME-BARRED ................................................................................7

      POINT III --   THE COMPLAINT FAILS TO ALLEGE A VIABLE
                           CAUSE OF ACTION FOR FRAUD..........................................................10

CONCLUSION.............................................................................................................................13

## *TABLE OF AUTHORITIES*

***CASES***                                                                                                                           ***PAGE(S)***

*6645 Owners Corp. v. GMO Realty Corp.*,
   306 A.D.2d 97, 762 N.Y.S.2d 60 (1st Dep't 2003) .................................................. 8

*Adamson v. Bachner*,
   2002 U.S. Dist. LEXIS 21102 (S.D.N.Y. 2002) ....................................................... 9

*Adler v. Berg Harmon Assocs.*,
   816 F. Supp.919 (S.D.N.Y. 1993) ....................................................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................................. 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555, 127 S. Ct. 1955 (2007) ...........................................................6

*Boyd v. Gering, Gross & Gross*,
   226 A.D.2d 489, 641 N.Y.S.2d 108 (2d Dep't 1996) ........................................... 7-8

*Brass v. Am. Film Techs, Inc.*,
   987 F.2d 142, 150 (2d Cir. 1993) ..........................................................................6

*Crigger v. Fahnestock & Co.*,
   443 F.3d 230 (2d Cir. 2006) ............................................................................... 10

*De Carlo v. Ratner*,
   204 F. Supp.2d 630 (S.D.N.Y. 2002) ............................................................... 7, 9

*Dozier v. Willkie Farr & Gallagher LLP*,
   2011 U.S. Dist. LEXIS 50687 (S.D.N.Y. 2011) ...................................................... 8

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ............................................................................... 10

*Hadda v. Lissner & Lissner LLP*,
   99 A.D.3d 476, 952 N.Y.S.2d 126 (1st Dep't 2012) .............................................. 8

*Hayden v. Patterson*,
   594 F.3d 150 (2d Cir. 2010) ................................................................................. 6

*I. Meyer Pincus & Associates, Inc. v. Oppenheimer & Co., Inc.*,
   936 F.2d 759, 762 (2d Cir. 1991) ..........................................................................6

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ............................................................................... 10

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184, 191 (2d Cir. 2007) ............................................................................ 6

*Morson v. Kreindler & Kreindler, LLP*,
   814 F.Supp.2d 220 (E.D.N.Y. 2011) ...................................................................... 8

*Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC*,
   797 F.3d 160 (2d Cir. 2015) .................................................................................. 10

*Shumsky v. Eisenstein*,
   96 N.Y.2d 164, 726 N.Y.S.2d 365 (2001) ............................................................. 7

*Warren v. John Wiley & Sons, Inc.*,
   952 F. Supp.2d 610 (S.D.N.Y. 2013) ..................................................................... 10

*Weaver v. Chrysler Corp.*,
   172 F.R.D. 96 (S.D.N.Y.) ...................................................................................... 11

**STATUTES**

CPLR 214 .............................................................................................................. 7, 8

**RULES**

Fed. R. Civ. P. 9 ..................................................................................................... 10, 11

Fed. R. Civ. P. 12 ................................................................................................... 1, 6

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the motion to dismiss the first amended complaint herein, by defendants Ralph K. Stone, Rachel L. Gould and Meister Seelig & Fein LLP (collectively "the law firm"), pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

Plaintiff commenced this action by filing a complaint in the United States District Court, Southern District of New York, on October 24, 2022.  Such original complaint sounded exclusively in legal malpractice, and the law firm responded to same by pre-motion letter clearly outlining the basis for its intended motion to dismiss on statute of limitations grounds.  In response, plaintiff thereafter filed an amended complaint on January 20, 2023, a copy of which is annexed to the Declaration of Lisa L. Shrewsberry as Exhibit "A."  While the amended complaint continues to assert a claim entirely based upon advice rendered by the law firm in 2016 (Am. Compl. ¶1), plaintiff now attempts to avoid dismissal on the basis of untimeliness by tacking on a fraud claim.

Plaintiff Loren Ridinger brings this action on behalf of herself, and on behalf of the Estate of James Ridinger.  The allegations in the amended complaint involve a 116 foot yacht named Utopia II ("the yacht").  Am. Compl. ¶3.  It is alleged that in 2016, the yacht was owned by Milagro Yacht Charters, LLC ("Milagro"), of which Loren Ridinger and James Ridinger were two of seven members.  Am. Compl. ¶¶3, 20-21.  It is alleged that in early 2016, Milagro was considering donating the yacht to a tax-exempt charitable organization, in order to claim "a charitable deduction" on its taxes.  Am. Compl. ¶¶24-25.  Such a deduction by Milagro was to have the effect of reducing the taxable income of Loren Ridinger and James Ridinger, as two of the members of Milagro.  Am. Compl. ¶25.  It is alleged that in furtherance of such plan, pursuant to the suggestion

of the yacht's captain, the Ridingers were considering a donation of the yacht to AMIKids, Inc., a charitable organization for youth. Am. Compl. ¶26.

The amended complaint alleges that the Ridingers thereafter retained the law firm, in or about February 2016. Am. Compl. ¶27. It is alleged that in March 2016, the law firm advised that a donation of personal property (such as the yacht) to a charitable organization was subject to a three year "look-back" period, which could affect the amount of a charitable tax deduction if the item donated was thereafter sold by the donee within three years of donation. Am. Compl. ¶31. In other words, the amount of the charitable deduction, which was the value assigned to the property at the time of donation, could be later reduced by the IRS if the donee sold the personal property within three years for an amount less than such assigned value. Am. Compl. ¶31.

In March 2016, the law firm proposed that Milagro donate the yacht to Veterans Inc., an organization with which the law firm advised that it had a pre-existing attorney-client relationship, and which regularly accepted donations of personal property. Am. Compl. ¶32. The law firm advised that once Milagro donated the yacht to Veterans Inc., it would immediately be sold by Veterans Inc. to a holding company by the name of RR Skye Holdings, LLC ("RR Skye") (a special purpose entity which served as a holding company, to shield Veterans Inc. from the liability that could arise from boat ownership), to lock in the value of the tax deduction at the value of the yacht upon donation. Am. Compl. ¶¶33-41. It is alleged that the law firm advised that such transaction with Veterans Inc. would not require a marine survey, which would have been required by any other potential donee. Am. Compl. ¶33. It is alleged that instead Milagro wished to rely on a more limited "Yacht Appraisal Report," which valued the yacht at $4.93 million (Am. Compl. ¶28), a copy of which is annexed to the Declaration of Lisa L. Shrewsberry as Exhibit "B", which Yacht Appraisal Report expressly states that it "is not intended as a survey of the vessel." Such

2

transaction was to serve to lock in the amount of the charitable deduction to Milagro in 2016, provide Veterans Inc. with a donation to aid in its mission to support veterans through use of the yacht, and (as allowed by the IRS) provide Market America Worldwide, Inc. (of which plaintiff and her husband were two of seven shareholders) with part-time access to use of the yacht in exchange for payment of its operating costs.  Am. Compl. ¶¶21, 41-42.

It is alleged that Milagro followed the advice of the law firm, and that in May 2016 Milagro donated the yacht to Veterans Inc., which immediately sold the yacht to RR Skye.  Am. Compl. ¶¶40-41.  In anticipation of such donation, Veterans Inc. also entered a Fiscal Sponsorship Agreement, dated April 20, 2016 (the "Fiscal Sponsorship Agreement"), wherein Veterans Inc. granted to public benefit corporation Killer Impact, Inc. ("Killer Impact"), the right to engage in activities in furtherance of the charitable and educational goals of Veterans Inc.  A copy of such Fiscal Sponsorship Agreement and a copy of the the Fiscal Sponsorship Annual Report of Killer Impact are annexed to the Declaration of Lisa L. Shrewsberry as Exhibits "C" and "D," respectively.  It is alleged that to consummate the transaction, the law firm prepared (1) a Deed of Gift from Milagro to Veterans Inc., (2) a Form 8282 (Donee Information Return), (3) a Form 8283 (Noncash Charitable Contributions), and (4) a Form 1098-C (Contributions of Motor Vehicles, Boats and Airplanes) (Am. Compl. ¶39).

As planned, upon donation of the yacht by Milagro to Veterans Inc., Veterans Inc. immediately sold the yacht to RR Skye, in exchange for promissory notes by RR Skye in the aggregate amount of $4.93 million, copies of which are annexed to the Declaration of Lisa L. Shrewsberry as Exhibit "E."  In addition, in exchange for the promise by Market America of funding $500,000 of the yacht's post-sale operating costs, RR Skye also gave a promissory note to Market America for such amount (Am. Compl. ¶42), a copy of which is annexed to the

Declaration of Lisa L. Shrewsberry as Exhibit "F." Accordingly, Killer Impact ultimately received the right to the receive the payments under the RR Skye promissory notes, to be used in accordance with the Fiscal Sponsorship Agreement.[1] Milagro then claimed a charitable deduction of $4.93 million on its 2016 tax return. Am. Compl. ¶43. The Ridingers, in turn, reported a charitable deduction on their joint tax return of $4,752,164, pursuant to their ownership interest in Milagro. Am. Compl. ¶43.

In 2017, it was determined that the yacht was donated by Milagro in a condition needing an estimated $4 million in maintenance and repairs (as reflected in a prior marine survey in the possession of the Ridingers but not disclosed by them to the appraiser, the law firm or the donee), and which reduced the actual value of the yacht from the amount reflected on Milagro's Yacht Appraisal Report to approximately $1 million at the time of donation. Further, Market America failed to fund the $500,000 of promised operating expenses, and even admits in the amended complaint that only $400,000 was advanced. Am. Compl. ¶42. Accordingly, and as a matter of necessity, after making some of the most urgent repairs at its expense, RR Skye sold the yacht to a third party for $1.3 million in September 2017. Am. Compl. ¶46.

In light of the foregoing facts, the IRS also became aware of the actual value of the yacht at the time of the donation, and commenced an audit of Milagro in 2019. Am. Compl. ¶45. Among other challenges to the Ridingers' 2016 and 2017 tax returns, the IRS ultimately disallowed the amount of Milagro's charitable deduction because the yacht was not worth $4.93 million at the time it was donated. Am. Compl. ¶49. Thereafter, in June 2021, the IRS alleged deficiencies and

---

[1] The Fiscal Sponsorship Agreement required Killer Impact to use any distributions from Veterans Inc. for charitable, mission-driven projects. The distribution to Killer Impact by Veterans Inc. of the promissory note from RR Skye allowed Killer Impact to lease the yacht from RR Skye for conducting its business, having meetings, providing lodging accommodations for guests, hosting special events and to offer the yacht for charter to raise funds for operating expenses. Additionally, Market America and the Ridingers continued to use the yacht after the donation and sale to provide lodging accommodations for employees and guests, and to use for a family trip to the Bahamas.

fraud penalties against Loren and James Ridinger based upon the donation of the yacht by Milagro in 2016, and other unrelated tax issues in both 2016 and 2017.  Am. Compl. ¶49.  (It should be noted that some of the tax issues arose from deductions by Milagro in 2017, that had nothing to do with the yacht, as it already been donated in 2016.)  Copies of such deficiency notices are annexed to the Declaration of Lisa L. Shrewsberry as Exhibit "G."  Plaintiffs then allege that they entered a settlement with the IRS in June 2022, without actually alleging that any amount of such indeterminate settlement involved the charitable deduction connected to the donation of the yacht by Milagro  Am. Compl. ¶51.

Incredibly, plaintiff now seeks to concoct a legal malpractice claim from such facts, seeking to recover the "lost" value of the yacht and seeking to be otherwise reimbursed for the expenses caused by Milagro's misrepresented value of the yacht and the failure by Market America to fund operating expenses.  More incredibly, plaintiff has sought to add a fraud claim against the law firm, based on such facts, in order to avoid the consequences of the untimely legal malpractice claim.

## ARGUMENT

### POINT I

### STANDARD OF REVIEW

A district court may grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) unless the complaint contains sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937 (2009); *Hayden v. Patterson,* 594 F.3d 150 (2d Cir. 2010). "Although for the purpose of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Furthermore, a court may consider documents attached to the complaint as exhibits, as well as any documents that are integral to, or incorporated by reference in, the pleading. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Courts may also consider matters of which judicial notice may be taken and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Techs, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993); *I. Meyer Pincus & Associates, Inc. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991).

## POINT II

## THE CLAIMS CONTAINED IN THE COMPLAINT ARE TIME-BARRED

The claims asserted against the law firm, for legal malpractice, breach of fiduciary duty, fraud and vicarious liability for same, are all time-barred. Plaintiff's complaint is entirely based upon the law firm's legal advice with respect to the donation of the yacht by Milagro for the benefit of Veterans Inc. Each cause of action alleges that the law firm's advice failed to secure a $4.93 million tax deduction to Milagro for the charitable donation, and subsequently to Loren and James Ridinger for their share of such deduction as two of the seven members of Milagro. Each cause of action asserts that the IRS ultimately disallowed such charitable deductions, based upon the errors of the law firm. Moreover, it is vaguely alleged in each cause of action (with no factual support whatsoever) that the law firm's advice regarding the donation of the yacht was in breach of the law firm's "duty of loyalty" and created a conflict of interest, because the transaction somehow personally benefitted Attorneys Stone and Gould. Am. Compl. ¶¶57-59, 66-70, 76, 87. Moreover, each cause of action seeks the same relief, which is "actual and consequential damages, including but not limited to all amounts the Ridingers incurred in responding to and resolving the tax issues and liabilities from the IRS audit," as well as the value of the yacht. Am. Compl. ¶¶61,62, 71, 72, 82, 83, 89.

Under New York law, the statute of limitations for an action to recover damages for legal malpractice is three years. CPLR 214(6). The limitations period begins to accrue "not when the plaintiff discovers the legal malpractice, but when the malpractice is committed." *De Carlo v. Ratner*, 204 F. Supp.2d 630, 635 (S.D.N.Y. 2002); *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 166, 726 N.Y.S.2d 365 (2001) (an action to recover damages for legal malpractice accrues when the malpractice is committed not when the client discovered it); *Boyd v. Gering, Gross & Gross*, 226

7

A.D.2d 489, 489, 641 N.Y.S.2d 108 (2d Dep't 1996) (the law is well settled that an action to recover damages for legal malpractice accrues when the malpractice is committed). The amended complaint clearly alleges that the malpractice claim is entirely based upon the purportedly conflicted and erroneous legal advice rendered by the law firm relative to the donation of the yacht, which took place in May 2016. Accordingly, any claim for legal malpractice must have been commenced by May 2019. As this action was not commenced until October 2022, any claim for legal malpractice is long time-barred.

Moreover, under New York law, a claim for breach of fiduciary duty that is "based on the same alleged conduct amounting to legal malpractice" is subject to the same three-year statute of limitations period as the legal malpractice claim. *Dozier v. Willkie Farr & Gallagher LLP*, 2011 U.S. Dist. LEXIS 50687 (S.D.N.Y. 2011); *Morson v. Kreindler & Kreindler, LLP*, 814 F.Supp.2d 220, 227 (E.D.N.Y. 2011) (concluding that CPLR 214(6) applied to breach of fiduciary duty claim against defendant attorneys because the claims were based on the same alleged conduct that formed plaintiff's legal malpractice claim). When a plaintiff brings a breach of fiduciary duty claim that arises from the same facts as a time-barred legal malpractice claim, the fiduciary duty claim must also be dismissed as time-barred. *Hadda v. Lissner & Lissner LLP*, 99 A.D.3d 476, 477, 952 N.Y.S.2d 126 (1st Dep't 2012) (dismissing breach of fiduciary duty claim as time-barred because it was duplicative of time-barred legal malpractice claim); *6645 Owners Corp. v. GMO Realty Corp.*, 306 A.D.2d 97, 98, 762 N.Y.S.2d 60 (1st Dep't 2003) (finding a breach of fiduciary duty claim barred by the three-year statute of limitations because it was not "separate and distinct from the alleged legal malpractice").

Similarly, plaintiff's fraud claim also centers on the law firm's alleged erroneous advice about the donation of the yacht and the law firm's purported recommendation of the strategy

followed in order to further the personal interests of Attorneys Stone and Gould. Am. Compl. ¶¶74-76. It is clear, therefore, that plaintiff's attempt to add a fraud claim to the complaint is "nothing more than an attempt to preserve [the] malpractice claim against" the law firm. *DeCarlo v. Ratner,* 204 F. Supp.2d at 637 (S.D.N.Y. 2002) (fraud claim duplicative of legal malpractice claim where based upon same facts and seeking same damages, and therefore, not distinct from legal malpractice claim); *Adamson v. Bachner,* 2002 U.S. Dist. LEXIS 21102 (S.D.N.Y. 2002) (dismissal of fraud claim as duplicative of legal malpractice claim where both claims based upon attorney's failure to zealously and faithfully advise plaintiff).

All of plaintiffs' claims, as clearly alleged in the amended complaint, are based upon legal advice rendered in 2016. The amended complaint makes clear that the transaction at issue is the donation of the yacht, which was completed in May 2016. Am. Compl. ¶1. Moreover, the causes of action for legal malpractice, breach of fiduciary duty and fraud (as well as the claim for vicarious liability), attempt to assert that the law firm breached a duty of loyalty to plaintiffs, upon the argument that the defendants personally profited from the transaction. Am. Compl. ¶47. Accordingly, all causes of action fall within the above analysis (as does the claim of vicarious liability). The claims alleged in the amended complaint, therefore, have been time-barred since May 2019, and should be dismissed.

## POINT III

## THE COMPLAINT FAILS TO ALLEGE A VIABLE
## CAUSE OF ACTION FOR FRAUD

Plaintiff's cause of action for fraud fails to state a cause of action upon which relief may be granted, in any event. Fraud claims are subject to the heightened pleading standard governed by Fed. R. Civ. P. 9(b). Warren v. John Wiley & Sons, Inc., 952 F. Supp.2d 610 (S.D.N.Y. 2013). The Second Circuit has held that:

> In essence, Rule 9(b) places two . . . burdens on fraud plaintiffs – the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state. As to the first, we have held that the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements or omissions are fraudulent." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted). As to the second, though mental states may be pleaded "generally," Plaintiffs must nonetheless allege facts "that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)

Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC, 797 F.3d 160, 171 (2d Cir. 2015). Moreover, to state a claim for fraud under New York law, a plaintiff must sufficiently plead the following elements: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to plaintiff. Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006).

The amended complaint states generally that the law firm's advice served to "benefit themselves and their affiliates" (Am. Compl. ¶3), and that Attorneys Stone and Gould personally profited from same. Am. Compl. ¶¶8, 29, 47, 48, 52, 67, 69, 70, 78. However, the amended

10

complaint is silent with respect to what purported personal benefit was received by either Attorney Stone or Attorney Gould, or any affiliate thereof, as well as the purported mechanism in the structure of the underlying transaction that afforded such benefit. Indeed, such reckless allegations, which are parroted repeatedly throughout the pleading, are refuted by other allegations in the complaint, wherein it is clearly stated that Milagro went forward with the donation of the yacht upon the understanding that the law firm had a prior relationship with the donee, Veterans Inc. (Am. Compl. ¶4, 32), and that the transaction was going to involve the immediate sale of the yacht (after donation) to RR Skye, an entity controlled by Attorneys Stone and Gould. Am. Compl. ¶35, 41. The amended complaint identifies three entities affiliated with Attorneys Stone and Gould – Veterans Inc., a charitable organization with a pre-existing attorney-client relationship with the law firm, RR Skye, which served as the holding company to protect Veterans Inc., and Killer Impact, a public benefit corporation acting to further the charitable and educational goals of Veterans Inc. The complaint is silent with respect to how Attorney Stone or Attorney Gould reaped any benefit from the structure or execution of the transaction in any way (or to the detriment of plaintiff, Veterans Inc. or anyone else). The complaint, therefore, does not allege that the law firm engaged in any fraudulent conduct. Indeed, plaintiff does not allege (as she must) what purported benefit was received by any of the defendants. *Adler v. Berg Harmon Assocs.*, 816 F. Supp.919 (S.D.N.Y. 1993); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D.N.Y.) 1997. Based upon the foregoing, plaintiff's claim of fraud fails to state a viable claim.

Moreover, the complaint entirely fails to meet plaintiff's burden under Fed. R. Civ. P. 9(b) or the elements of fraud under New York law. It appears that the purported misrepresentation by Attorney Stone and/or Attorney Gould is that "they represented that they would not be benefitting from the transaction." Am. Compl. ¶36. However, again, there is no allegation regarding who

11

made such statement, when and where such statement was made, and (importantly) why such statement was fraudulent.  Simply saying it does not make it so.  It is similarly unclear upon what basis plaintiff is claiming that the law firm intended by omission to defraud her or anyone, or reasonable reliance upon such purported assertion to effectuate the donation of the yacht.  It bears repeating that the damage claimed by plaintiff is based upon the failure of the charitable deduction due to the true value of the yacht at the time of the donation, and is unrelated to the (unsupported) assertion that the law firm somehow benefitted from the transaction.  Moreover, the documentary evidence in support of the transaction (which is incorporated by reference in the amended complaint), demonstrates that the transaction was entirely structured to effectuate the philanthropic intent to benefit Veterans Inc., and that no personal benefit accrued to the defendants.  It is respectfully requested, therefore, that the fraud claim be dismissed for failure to state a viable cause of action.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that the amended complaint be dismissed in its entirety and with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: Hawthorne, New York
February 3, 2023

**TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP**

By: *Lisa L. Shrewsberry*

Lisa L. Shrewsberry, Esq.  (LS 1597)
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600
lshrewsberry@tlsslaw.com
*Attorneys for Defendants*