

MARCUS NEIMAN RASHBAUM & PINEIRO LLP

www.mnrlawfirm.com

February 14, 2023

**Via ECF**

Lisa L. Shrewsberry, Esq.
Traub Lieberman Straus & Shrewsberry LLP
Mid-Westchester Executive Park
Seven Skyline Dr.
Hawthorne, NY 10532

       RE: *Ridinger, et al. v. Stone, et al.*, Case No. 2022-CV-09082-VM

Dear Ms. Shrewsberry,

       On behalf of Plaintiff Loren M. Ridinger, and pursuant to Rule II(B) of the Individual Practices of United States District Judge Victor Marrero, we write this response to your letter dated February 7, 2023. As explained herein, Defendants are wrong that dismissal of the Amended Complaint is warranted for any of the purported reasons set forth in your letter.

       *First,* Defendants are wrong about when the three-year statute of limitations for malpractice accrued because Defendants misstate when Plaintiff suffered an "actionable injury." A malpractice claim accrues "when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court." *Flintlock Constr. Servs., LLC v. Rubin, Fiorella & Friedman, LLP*, 188 A.D.3d 530, 531 (1st Dep't 2020) (cites and quotes omitted). "In most cases, this accrual time is measured from the day an actionable injury occurs" or "when the damages are sufficiently calculable." *Id.* (damages were sufficiently calculable "when the jury rendered its verdict"). New York courts routinely hold that malpractice claims are not ripe, and therefore cannot be maintained, until the plaintiff has incurred actual and ascertainable damages. In other words, until that point, a plaintiff *cannot* "obtain relief in court" because he or she cannot adequately allege damages (or, for that matter, that a defendant lawyer had *caused* such non-existent damages). That is why, as one Court in this District has expressed, "[l]ogic dictates that a legal malpractice claim may not be asserted until the matter on which the claim is based has been concluded." *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 214 (S.D.N.Y. 2010); *see also Henkel v. Wagner*, 2013 WL 12084503, *7 (S.D.N.Y. Mar. 18, 2013) (malpractice claim was premature because plaintiff had not yet suffered any actual damages given the pendency of an appeal that would determine the effect, if any, of the alleged malpractice) (compiling cases).

       In this case, the earliest the Ridingers knew there was even a *possibility* they would sustain damages of any kind as a result of Defendants' malpractice was in the course of the IRS audit in 2020. The IRS issued the Ridingers notices of deficiency in June 2021. *Id.* at ¶ 49. This lawsuit was filed in

MIAMI OFFICE
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530, Miami 33131
P • 305-400-4260 | F • 866-780-8355

FORT LAUDERDALE OFFICE
One Financial Plaza
100 Southeast Third Avenue, Suite 805, Ft Lauderdale 33394
P • 954-462-1200 | F • 866-780-8355

October 2022, just months after the Ridingers settled with the IRS in June 2022 (which settlement was entered by the Tax Court in July 2022). *Id.* at ¶ 51. With this timeline as context, the earliest the Ridingers incurred any actual and ascertainable damages was during the audit in 2020 when the Ridingers first incurred defense costs that conceivably were attributable to Defendants' malpractice—although, of course, the full magnitude of their damages was not known until later. The cause of action therefore could not have accrued any earlier than 2020 because it was not until then that damages were "sufficiently calculable" such that the Ridingers could have "obtained relief in court."[1]

*Second*, Defendants are wrong that Plaintiff's claim for breach of fiduciary duty is duplicative of her malpractice claim. Plaintiff's malpractice claim is based on the flawed legal advice that Defendants rendered as a result of their failure to adhere to professional standards—*i.e.*, their advice that a donation and sale would lock in the donative value of the yacht. *See* Am. Compl. at ¶¶ 59–61. Plaintiff's fiduciary duty claim, however, is based on Defendants' intentional misconduct in misrepresenting and concealing that their true intent was to carry out a transaction that would advance their own interests instead of the Ridingers' interests. *Id.* at ¶¶ 66–70. As such, a six-year limitations period—and not a three-year limitations period—applies to the fiduciary duty claim. *See Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 552 (E.D.N.Y. 2015) ("If a claim for breach of fiduciary duty merely alleges a failure to utilize reasonable care or negligence, the three-year statute of limitations will apply. However, if plaintiff alleges a breach of fiduciary duty through intentional actions, such allegations will not be considered malpractice claims and the six-year statute of limitations will apply."); *Burke, Albright, Harter & Rzepka, LLP v. Sills*, 83 A.D.3d 1413, 1414 (4th Dep't 2011) (proposed counterclaims for breach of fiduciary duty and fraud were not duplicative of malpractice claim because they were "based on allegations that plaintiffs intended to deceive").

*Third*, for similar reasons, Defendants are wrong that Plaintiff's fraud claim is duplicative of her malpractice claim. The fraud claim is independent because it is based on intentionally tortious conduct by Defendants that is more than mere concealment of their malpractice. *Johnson v. Proskauer Rose, LLP,* an opinion issued by the First Department in 2015, is illustrative. 129 A.D.3d 59 (1st Dep't 2015). In that case, the defendant lawyers argued, exactly as Defendants do here, that the plaintiffs' fraud claim was duplicative of their malpractice claim and therefore was time-barred. *Id.* at 66. The trial court rejected that argument in ruling on defendants' motion to dismiss, and on appeal the First Department affirmed the trial court's order. The First Department explained that the fraud claim was independent from the malpractice claim because "Plaintiffs allege not only that defendants failed to adequately advise them with respect to the tax strategy[,]" but also "that [defendants] pressured them into the scheme because, *at the outset*, [defendants'] paramount concern was preserving its lucrative arrangement with [a third-party tax firm], . . . ." *Id.* at 69.

---

[1] Additionally, the continuous representation doctrine tolled the limitations period as to Defendant Stone because all parties understood from the outset that the *Utopia II* transaction was merely the first step in a course of representation that also would include the Ridingers' disposition of another yacht, *Utopia III*, in anticipation of the completion of a third yacht that had been commissioned—and the *Utopia III* donation was not completed until early 2020. *See* Am. Compl. at ¶ 44; *Dyamm v. Cahill*, 730 F. Supp. 1245, 1264 (S.D.N.Y. 1990) (complaint's allegations were sufficient to toll the SOL because "the relationship it asserts is a continuous one involving professional advice about matters that are the same or related to the subject of the suit").

MIAMI OFFICE
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530, Miami 33131
P • 305-400-4260 | F • 866-780-8355

FORT LAUDERDALE OFFICE
One Financial Plaza
100 Southeast Third Avenue, Suite 805, Ft Lauderdale 33394
P • 954-462-1200 | F • 866-780-8355

As in *Johnson*, Plaintiff alleges that Defendants were motivated from the outset not by a desire to effectuate the Ridingers' philanthropic intent, but rather by an interest in benefitting themselves and an entity they were affiliated with called Killer Impact—an entity Defendants never mentioned when proposing and carrying out the transaction. *Id.* at ¶¶ 76–78. Indeed, Plaintiff alleges that Defendants concealed this ulterior motive from the Ridingers, falsely representing that they did not stand to benefit from the transaction in any way. *Id.* at ¶ 36. Plaintiff's fraud claim therefore "is not based simply upon errors in professional judgment," like her malpractice claim, but rather is predicated on the commission of an intentional tort. *See Mitschele v. Schultz*, 36 A.D.3d 249, 254–55 (1st Dep't 2006) (reinstating fraud claim and explaining "[D]efendants' alleged fraud is not simply the failure to disclose the malpractice based upon accounting errors. Rather, defendants are alleged to have perpetrated a fraud on plaintiff *from the time they were retained* to provide accounting services, in failing to disclose their concern with protecting the interests of another entity . . . ."). [2]

Finally, Defendants appear to argue that Plaintiff has failed to plead fraud with sufficient particularity because she has not alleged "what purported benefit was received by any of the defendants." Assuming arguendo that Plaintiff is even required to allege how Defendants benefited, which is not an element of a fraud claim, here Plaintiff has done so. Plaintiff alleges that Defendants' deception caused the Ridingers to part with *Utopia II* in a transaction they would not otherwise have pursued, and Plaintiff alleges that Stone and Gould orchestrated the transaction in such a manner that more than $1.1 million of the proceeds they ultimately received from selling the Yacht went to themselves or their affiliated entity, Killer Impact, instead of the donee candidate that Defendants had aggressively pitched to the Ridingers. *Id.* at ¶¶ 46–48. Those allegations are more than sufficient to satisfy Rule 9(b); to the extent Defendants suggest that a plaintiff is required to plead, for example, exactly how fraudulently obtained funds were apportioned among defendants or how defendants proceeded to use those funds, they are simply wrong.

In furtherance of their claim that Plaintiff's allegations are inadequate, Defendants ask the Court to consider context about Killer Impact's supposed charitable purpose and how it was allegedly required to use funds—context that, according to Defendants, shows there was nothing improper about the transaction. Not only are these arguments outside the four corners of the Amended Complaint and not properly considered at the motion to dismiss stage, at most they amount to a mere denial and do not bear on the sufficiency of Plaintiff's allegations. Plaintiff's claims are adequately pled and there is no basis for dismissing the Amended Complaint.

---

[2] It bears emphasis that Defendants will be equitably estopped from raising a statute of limitations defense regardless of which limitations periods would otherwise apply, because any delay in bringing this lawsuit was the result of their own affirmative wrongdoing. *See General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 128 (1966); *see also Matter of Watson*, 8 A.D.3d 1092, 1094 (4th Dep't 2004) (where "a fiduciary relationship exists and there are colorable allegations of concealment, the doctrine of equitable estoppel may apply to toll the statute of limitations"); *Erbe v. Lincoln Rochester Trust Co.*, 13 A.D.2d 211, 214–15 (4th Dep't 1961) (reversing dismissal on limitations grounds of a complaint alleging breach of fiduciary duty; because plaintiffs had alleged trustee-defendant's concealment of wrongdoing, trustee may be equitably estopped from relying upon the limitations period and dismissal therefore was inappropriate).

MIAMI OFFICE
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530, Miami 33131
P • 305-400-4260 | F • 866-780-8355

FORT LAUDERDALE OFFICE
One Financial Plaza
100 Southeast Third Avenue, Suite 805, Ft Lauderdale 33394
P • 954-462-1200 | F • 866-780-8355

Respectfully submitted,

*/s/ Jeffrey Neiman*

Jeffrey A. Neiman, Esq.
jneiman@mnrlawfirm.com
Jason L. Mays, Esq.
jmays@mnrlawfirm.com

cc: Honorable Victor Marrero

MIAMI OFFICE
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530, Miami 33131
P • 305-400-4260 | F • 866-780-8355

FORT LAUDERDALE OFFICE
One Financial Plaza
100 Southeast Third Avenue, Suite 805, Ft Lauderdale 33394
P • 954-462-1200 | F • 866-780-8355