UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Case No. 22-CV-09082-JHR

LOREN M. RIDINGER, individually and
on behalf of the Estate of James Ridinger,

      Plaintiff,

vs.

RALPH K. STONE, RACHEL L. GOULD, and
MEISTER SEELIG & FEIN LLP,

      Defendants.
                                         /

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**MARCUS NEIMAN RASHBAUM &
PINEIRO LLP**

Daniel L. Rashbaum, Esq.
Jeffrey A. Neiman, Esq.
Jason L. Mays, Esq.

One Financial Plaza
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394
954-462-1200

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

I. BACKGROUND………………………………………………………………………... 1

II. LEGAL STANDARD…………………………………………………………………... 4

III. ARGUMENT…………………………………………………………………………… 5

   A. Plaintiff's Claims Are Timely……………………………………………………...5

      *(i) Plaintiff's Legal Malpractice Claim is Timely* ………………………………………5

      *(ii) Plaintiff's Breach of Fiduciary Duty and Fraud Claims Are Also Timely*…………..7

      *(iii) Defendants Should Be Equitably Estopped from Raising a Statute of Limitations Defense*……………………………………………………………………………..10

      *(iv) The Continuous Representation Doctrine Tolled the Statute of Limitations as to Defendant Stone*……………………………………………………………………11

   B. The Amended Complaint Adequately Alleges a Claim for Fraud……………………….11

   C. The Court Should Disregard Defendants "Facts" from Outside the Four Corners of the Amended Complaint……………………………………………………………………..12

IV. CONCLUSION……………………………………………………………………......… 12

## *TABLE OF AUTHORITIES*

***CASES***                                                                                                                                                                    ***PAGE(S)***

*Annis v. County of Westchester*
    36 F.3d 251 (2d Cir.1994)……....……....……………………………………………....…4

*Aquino by Convergent Distributors of Texas, LLC v. Alexander Capital, LP*,
    642 B.R. 106 (S.D.N.Y. 2022)……………………………………..………………………11

*Bickhardt v. Ratner*,
    871 F. Supp. 613 (S.D.N.Y. 1994) …..……………………………………………………12

*Burke, Albright, Harter & Rzepka, LLP v. Sills*
    83 A.D.3d 1413 (4th Dep't 2011)…………….....……………………………………….....8

*Dyamm v. Cahill*
    730 F. Supp. 1245 (S.D.N.Y. 1990)………….....……………………………………….....11

*Energizer Brands, LLC v. My Battery Supplier, LLC*,
    529 F. Supp. 3d 57 (E.D.N.Y. 2021)…….…..……………………………………………...13

*Erbe v. Lincoln Rochester Trust Co.*
    13 A.D.2d 211 (4th Dep't 1961)………...…………………………………………………10-11

*Flintlock Constr. Servs., LLC v. Rubin, Fiorella & Friedman, LLP*
    188 A.D.3d 530 (1st Dep't 2020)……………………………………………………….…..6

*Geisler v. Petrocelli*
    616 F.2d 636 (2d Cir.1980)…………………………………..……………………..….…4-5

*General Stencils, Inc. v. Chiappa*
    18 N.Y.2d 125 (1966)…………………………………………………………………….…..10

*Goldman v. Belden*
    754 F.2d 1059 (2d Cir. 1985)……………………………………….…..…………....…5

*Henkel v. Wagner*
    2013 WL 12084503 (S.D.N.Y. Mar. 18, 2013)…………..……………………………6

*Hishon v. King & Spalding*
    467 U.S. 69 (1984)…………………………………………………………………………4

*H.J. Inc. v. Northwestern Bell Tel. Co.*
    492 U.S. 229 (1989)…………..……………………………………………………...…4

*Jaufman v. Levine*
    2007 WL 2891987 (N.D.N.Y. Sept. 28, 2007) …………….....................................11-12

*Johnson v. Proskauer Rose, LLP*
    129 A.D.3d 59 (1st Dep't 2015)……………….……………………………………8-10

*Matter of Watson*
    8 A.D.3d 1092 (4th Dep't 2004)………………….……………………………………10

*Mitschele v. Schultz*
    36 A.D.3d 249 (1st Dep't 2006)…………………….…………………………………10

*Neogenix Oncology, Inc. v. Gordon*
    133 F. Supp. 3d 539 (E.D.N.Y. 2015)……………………………………………….....8

*Oakes v. Cooke*
    858 F. Supp. 330 (N.D.N.Y. 1994)……………….....………………………….…..…4

*Ricciuti v. New York City Transit Authority*
    941 F.2d 119 (2d Cir. 1991)…………………………..…………………………..…5

*Scheuer v. Rhodes*
    416 U.S. 232 (1974)………………….…..……………………………………..…5

*Stonewell Corp. v. Conestoga Title Ins. Co.*
    678 F. Supp. 2d 203 (S.D.N.Y. 2010)……………….……………………………….6


**_STATUTES_**

   CPLR 213……………………….….……………………………………………..7

   CPLR 214.……………………………….……………………………………………..5, 6, 9

Plaintiff Loren M. Ridinger, on behalf of herself and her late husband James Ridinger, files this Memorandum of Law in Opposition to the Motion to Dismiss First Amended Complaint (the "Motion") filed by Defendants Ralph K. Stone ("Stone"), Rachel L. Gould ("Gould"), and Meister Seelig & Fein LLP ("MSF," and together with Stone and Gould, "Defendants") on February 27, 2023 [D.E. 37-39]. For the reasons set forth herein, Plaintiff's claims are both timely and adequately pled, and Defendants' Motion therefore should be denied.

## I. BACKGROUND

In this action, Plaintiff asserts claims for malpractice, breach of fiduciary duty, and fraud against Defendants, the Ridingers' former lawyers, arising from their conduct in connection with the disposition of a classic yacht in 2016.[1] Defendants Stone and Gould are lawyers who are licensed in the State of New York. *See* Am. Compl. at ¶¶ 14–15. At the time of the events that give rise to Plaintiff's claims, Stone and Gould practiced law at Defendant MSF, a New York-based law firm where Stone remains a Partner in the firm's Real Estate Group. *Id.* at ¶¶ 13–14.

As alleged in the Amended Complaint,[2] in early 2016, the Ridingers owned a yacht named *Utopia II* through an entity they controlled called Milagro Yacht Charters, LLC ("Milagro"). *Id.* at ¶¶ 18–21. Upon learning the Ridingers and Milagro were considering a potential sale or charitable donation of the yacht, Stone and Gould, whom the Ridingers had retained as their lawyers just weeks earlier to handle general personal and business matters, perceived an opportunity to benefit themselves and their affiliates. *Id.* at ¶¶ 27, 29. Subordinating the Ridingers'

---

[1] Plaintiff also asserts a claim for vicarious liability against Defendant MSF.

[2] The facts as set forth in this Background section are taken from the Amended Complaint. As explained herein, the "Statement of Facts" in Defendants' Motion includes "facts" from outside the four corners of the Amended Complaint, which the Court should disregard.

1

interests for their own, Stone and Gould—entirely unsolicited—presented the Ridingers with an alternative transaction to the ones they had been considering. *Id.* at ¶ 32.

Stone and Gould proposed that the Ridingers have Milagro donate the yacht to a specific non-profit organization with which they had a preexisting relationship called Veterans, Inc. ("Veterans"), which they said had a mission of providing vocational, medical, housing, and other services to veterans. *Id.* at ¶ 32. Stone and Gould explained that if Milagro were to make this particular donation, they would be able to facilitate Veteran's immediate sale of the yacht at its recently appraised value to a newly formed entity they controlled called RR Skye Holdings, LLC ("RR Skye"). *Id.* at ¶¶ 33, 41. Stone and Gould advised that this was a lawful way of carrying out the Ridingers' philanthropic intent while simultaneously locking in the donative value of the yacht—*i.e.*, securing the amount of the charitable deduction the Ridingers would be entitled to claim for tax purposes—which otherwise would be subject to potential change for the duration of a three-year "look-back" period. *Id.* at ¶¶ 34–35.

At the time Stone and Gould learned that the Ridingers were contemplating a potential donation, the Ridingers were considering a donee candidate called AMIKids, which the captain of *Utopia II* had recommended. *Id.* at ¶ 26. Stone and Gould caused the Ridingers to question whether the captain had coordinated to receive an undisclosed kickback in exchange for securing that donation. *Id.* at ¶ 30. Their supposed suspicion turned out to be entirely unfounded, but before this became apparent, the discomfort the Ridingers felt about a potential kickback caused them to abandon the AMIKids transaction and more closely consider Defendants' alternative proposal. *Id.* at ¶ 36. The Ridingers informed Stone and Gould in writing that kickbacks or side deals of any kind were a dealbreaker for them and would not be tolerated. *Id.* But Stone and Gould explicitly represented that they did not stand to benefit in any way from the proposal they had outlined, and

2

that their sole intention was to help the Ridingers understand and evaluate their alternatives and lawfully effectuate whatever transaction the Ridingers ultimately deemed to be in their best interest. *Id.*

Trusting and relying upon their lawyers, the Ridingers agreed to follow Defendants' proposal, which Defendants then implemented entirely on their own. *Id.* at ¶¶ 37–38. Unbeknownst to the Ridingers, however, the proposal by Stone and Gould was completely unlawful and improper, and the advice they had rendered was flat-out wrong. The donation-and-sale that Stone and Gould had proposed, recommended, advised, and carried out did *not* lock in the donative value of the yacht, as they had explicitly advised.

During the course of an expensive and time-consuming multi-year audit by the Internal Revenue Service, the Ridingers learned that Defendants' advice was wrong and for the first time suffered an injury as a result of Defendants' malpractice—in the form of defense costs. *Id.* at ¶¶ 45, 49. Worse, it was not until James Ridinger's IRS interview in January 2021 that the Ridingers learned they had been deceived by Stone and Gould. *Id.* Notwithstanding the assurances by Stone and Gould that they would not benefit from the transaction, the Ridingers learned that Stone and Gould had surreptitiously structured the transaction in such a way that the Ridingers' intended donee—Veterans—ultimately received a mere fraction of the yacht's value when it was sold for $1.3 million the year after the donation in September 2017, at which time all but $130,000 of the sale proceeds flowed primarily to Stone, Gould, and/or an undisclosed affiliated entity called Killer Impact, Inc. ("Killer Impact"). *Id.* at ¶ 47.

Stone and Gould had never mentioned Killer Impact when proposing the transaction, or that contemporaneously with the donation they had arranged for Veterans to assign a note corresponding to 90% of the purchase price to Killer Impact pursuant to a "fiscal sponsorship

agreement." *Id.* at ¶¶ 47–48.  In other words, Stone and Gould had lied to the Ridingers in order to induce them to pursue a specific transaction, without disclosing the mechanics of the transaction through which they and/or their affiliated entity would become the primary beneficiaries of the transaction instead of the donee.  *Id.*

The Ridingers ultimately expended millions of dollars to resolve tax liabilities—including both fraud and accuracy-based penalties that the IRS sought to assess—arising out of Defendants' poorly conceived transaction, a resolution that was necessary to avoid the serious potential for reputational harm to which the Ridingers and their businesses had been exposed by Defendants. *Id* at ¶¶ 9, 49–53.  Additionally, Defendants' self-dealing in connection with the donation was a fraud that also constituted clear-cut breaches of duties that were owed to the Ridingers as their lawyers.  Had it not been for the deception of Stone and Gould and the lies that induced the Ridingers to pursue the underlying donation, they never would have proceeded with the Veterans transaction. *Id.*

## II.  LEGAL STANDARD

A district court should grant a motion to dismiss under Federal Rule 12(b)(6) for failure to state a claim only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)); *Annis v. County of Westchester,* 36 F.3d 251, 253 (2d Cir.1994).   In applying this standard, a district court must accept the plaintiff's allegations as true and liberally construe the allegations in the light most favorable to the plaintiff. *See Oakes v. Cooke*, 858 F. Supp. 330, 333 (N.D.N.Y. 1994).

The court's duty is merely "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d

636, 639 (2d Cir.1980); *accord Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985). The appropriate inquiry, therefore, is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir. 1991) (plaintiff is not compelled to prove his case at the pleading stage).

### III.  ARGUMENT

In their Motion, Defendants argue the Amended Complaint should be dismissed because (1) Plaintiff's claims are time-barred, and (2) Plaintiff has failed to adequately plead a claim for fraud. For the reasons below, these arguments fail and the Court should deny the Motion.

**A. Plaintiff's Claims Are Timely**

Defendants argue, incorrectly, that Plaintiff's claims for legal malpractice, breach of fiduciary duty, and fraud are each time-barred. *See* Mot. at 7-9 ("Point II"). Defendants' argument stems from their position that all three claims arise from the flawed legal advice that Defendants are alleged to have rendered with respect to the donation of *Utopia II*, and therefore that each claim is governed by the three-year statute of limitations for malpractice under CPLR 214[6]. Defendants, however, are mistaken about when the three-year limitations period for malpractice accrued. And even if the Court rules that Defendants are *not* mistaken and that the malpractice claim is, in fact, time-barred, such a ruling would have no bearing on the breach of fiduciary and fraud claims because these latter claims are based on alleged conduct that is independent from the alleged malpractice and are governed by a longer limitations period under CPLR 213[8].

(i)     *Plaintiff's Legal Malpractice Claim Is Timely*

Although Defendants are correct that the limitations period for legal malpractice claims is three years under CPLR 214[6], they are wrong about when that limitations period accrued in this

case. Plaintiff's malpractice claim did not accrue until the course of the IRS audit in 2020, because that is the first point at which the Ridingers sustained an "actionable injury." Thus, the malpractice claim was timely filed within the three-year limitations period.

Under New York law, a malpractice claim accrues "when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court." *Flintlock Constr. Servs., LLC v. Rubin, Fiorella & Friedman, LLP*, 188 A.D.3d 530, 531 (1st Dep't 2020) (cites and quotes omitted). "In most cases, this accrual time is measured from the day an actionable injury occurs" or "when the damages are sufficiently calculable." *Id.* (damages were sufficiently calculable "when the jury rendered its verdict"). New York courts routinely hold that malpractice claims are not ripe, and therefore cannot be maintained, until the plaintiff has incurred actual and ascertainable damages. In other words, until that point, a plaintiff *cannot* "obtain relief in court" because he or she cannot adequately allege damages (or, for that matter, that a defendant lawyer had *caused* such non-existent damages). That is why, as one Court in this District has expressed, "[l]ogic dictates that a legal malpractice claim may not be asserted until the matter on which the claim is based has been concluded." *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 214 (S.D.N.Y. 2010); *see also Henkel v. Wagner*, 2013 WL 12084503, *7 (S.D.N.Y. Mar. 18, 2013) (dismissing legal malpractice claim as premature because plaintiff had not yet suffered any actual damages given the pendency of an appeal that would determine the effect, if any, of the alleged malpractice) (compiling cases).

In this case, the earliest the Ridingers sustained an "actionable injury" was when they learned the *Utopia II* transaction was a focus of the IRS audit in 2020; that is when the Ridingers first incurred defense costs that conceivably were attributable to Defendants' malpractice— although, of course, the full magnitude of their damages was not known until later. The IRS issued

the Ridingers notices of deficiency in June 2021. *Se* Am. Compl. at ¶ 49. This lawsuit was filed in October 2022, just months after the Ridingers settled with the IRS in June 2022 and the settlement was entered by the Tax Court in July 2022. *Id.* at ¶ 51. With this timeline as context, the cause of action for malpractice could not have accrued any earlier than 2020 because it was not until then that damages were "sufficiently calculable" such that the Ridingers could have "obtained relief in court." Until then, such a claim would have been premature.

(ii)     *Plaintiff's Breach of Fiduciary Duty and Fraud Claims Are Also Timely*

Even if Defendants are correct that Plaintiff's malpractice claim is time-barred—and for the above reasons, they are *not* correct—the same would not hold true for Plaintiff's breach of fiduciary duty and fraud claims. This is because, contrary to Defendants' argument, the breach of fiduciary duty and fraud claims are based upon fraudulent conduct that is independent of the alleged malpractice. As such, each of these claims is governed by CPLR 213[8], which provides that for "an action based upon fraud," "the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."

As Plaintiff alleges in the Amended Complaint, the Ridingers discovered the conduct that gives rise to these claims when James Ridinger was interviewed by the IRS in January 2021; that is when the Ridingers learned that Stone and Gould had lied to them and had structured the transaction in a manner that would benefit themselves or their entity Killer Impact, and that the intended donee had received a mere fraction of the eventual purchase price of the yacht. Am. Compl. at ¶¶ 45–48. And the Ridingers could not have discovered this conduct any earlier; indeed,

7

Plaintiff alleges that Defendants had been purposefully *concealing* the conduct from the Ridingers. *Id.*[3]

Case law further illustrates that Defendants' attempt to conflate Plaintiff's causes of action is unfounded. Plaintiff's malpractice claim is based on the flawed legal advice that Defendants rendered as a result of their failure to adhere to professional standards—*i.e.*, their advice that a donation and sale would lock in the donative value of the yacht. *See* Am. Compl. at ¶¶ 59–61. Plaintiff's breach of fiduciary duty claim, on the other hand, is based on Defendants' intentional conduct in misrepresenting and concealing that their true intent was to carry out a transaction that would advance their own interests instead of the Ridingers' interests. *Id.* at ¶¶ 66–70; *see Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 552 (E.D.N.Y. 2015) ("If a claim for breach of fiduciary duty merely alleges a failure to utilize reasonable care or negligence, the three-year statute of limitations will apply. However, if plaintiff alleges a breach of fiduciary duty through intentional actions, such allegations will not be considered malpractice claims and the six-year statute of limitations will apply."); *Burke, Albright, Harter & Rzepka, LLP v. Sills*, 83 A.D.3d 1413, 1414 (4th Dep't 2011) (proposed counterclaims for breach of fiduciary duty and fraud were not duplicative of malpractice claim because they were "based on allegations that plaintiffs intended to deceive").

The same is equally true of Plaintiff's fraud claim, which is based on intentionally tortious conduct by Defendants that is more than mere concealment of their malpractice. *Johnson v. Proskauer Rose, LLP,* an opinion issued by the First Department in 2015, is especially instructive. 129 A.D.3d 59 (1st Dep't 2015). In that case, the plaintiffs brought claims for both malpractice

---

[3] Additionally, it bears emphasis that regardless of the timing of the Ridingers' discovery, Defendants' eventual sale of *Utopia II* was in September 2017, *see* Am. Compl. at ¶ 46, fewer than six years before this case was filed in October 2022.

and fraud against their former lawyers arising from a tax avoidance strategy the lawyers allegedly had solicited the plaintiffs to pursue. *Id.* at 64. According to the plaintiffs, the defendant lawyers had advised them that the strategy, which would be carried out with the assistance of a third-party tax planning firm the defendants had introduced them to, would allow plaintiffs to avoid paying tax on gains realized from the sale of stock. *Id.* at 62–63. Although the defendants had advised the plaintiffs that the strategy would withstand IRS scrutiny, the IRS later investigated the plaintiffs' implementation of the strategy and, upon finding it was improper, assessed the plaintiffs millions of dollars in back taxes, penalties, and interest. *Id.* at 64. In their complaint, the plaintiffs alleged that the defendants' legal advice was flawed. But the plaintiffs *also* alleged that the defendants had concealed from them that they had a direct financial interest in helping the tax firm sell plaintiffs on the tax avoidance plan they had recommended. *Id.*

Confronted with those allegations, the defendants in *Johnson* argued, **exactly as Defendants do here**, that the plaintiffs' claims were time-barred and that their fraud claim was barred as duplicative under CPLR 214[6]. *Id.* at 65. The trial court rejected the defendants' argument that the fraud claim was duplicative, reasoning the fraud allegations were based on independent, intentionally tortious conduct that was more than mere concealment of malpractice. *Id.* at 66. On appeal, the First Department agreed with the trial court and affirmed its order. The First Department found the fraud claim was independent from the malpractice claim for limitations purposes because "Plaintiffs allege not only that defendants failed to adequately advise them with respect to the tax strategy[,]" but also "that [defendants] pressured them into the scheme because, *at the outset*, [defendants'] paramount concern was preserving its lucrative arrangement with [the tax firm], . . . ." *Id.* at 69.

9

As in *Johnson*, Plaintiff alleges that Defendants were motivated from the outset not by a desire to effectuate the Ridingers' philanthropic intent, but rather by an interest in benefitting themselves and an entity they were affiliated with called Killer Impact—an entity Defendants never once mentioned when proposing and carrying out the transaction. *See* Am. Compl. ¶¶ 76–78. Indeed, Plaintiff alleges that Defendants concealed this ulterior motive from the Ridingers, falsely representing that they did not stand to benefit from the transaction in any way. *Id.* at ¶ 36. Plaintiff's fraud claim therefore "is not based simply upon errors in professional judgment," like her malpractice claim, but rather is predicated on the commission of an intentional tort. *See Mitschele v. Schultz*, 36 A.D.3d 249, 254–55 (1st Dep't 2006) (reinstating fraud claim and explaining "[D]efendants' alleged fraud is not simply the failure to disclose the malpractice based upon accounting errors. Rather, defendants are alleged to have perpetrated a fraud on plaintiff *from the time they were retained* to provide accounting services, in failing to disclose their concern with protecting the interests of another entity . . . ."). The breach of fiduciary duty and fraud claims therefore are timely.

    (iii)    *Defendants Should Be Equitably Estopped from Raising a Statute of Limitations Defense*

Defendants should be equitably estopped from raising a statute of limitations defense regardless of which limitations periods would otherwise apply, because any delay in bringing this lawsuit was the result of their own affirmative wrongdoing. Indeed, Plaintiff alleges that Defendants concealed from the Ridingers information that would have revealed Defendants' self-interested conduct. *See, e.g.*, Am. Compl. at ¶ 48; *see also General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 128 (1966); *see also Matter of Watson*, 8 A.D.3d 1092, 1094 (4th Dep't 2004) (where "a fiduciary relationship exists and there are colorable allegations of concealment, the doctrine of equitable estoppel may apply to toll the statute of limitations"); *Erbe v. Lincoln Rochester Trust*

10

*Co.*, 13 A.D.2d 211, 214–15 (4th Dep't 1961) (reversing dismissal on limitations grounds of a complaint alleging breach of fiduciary duty; because plaintiffs had alleged trustee-defendant's concealment of wrongdoing, trustee may be equitably estopped from relying upon the limitations period and dismissal therefore was inappropriate).

    (iv)    *The Continuous Representation Doctrine Tolled the Statute of Limitations as to Defendant Stone*

Additionally, and in any event, the continuous representation doctrine tolled the limitations period as to Defendant Stone because all parties understood from the outset that the *Utopia II* transaction was merely the first step in a course of representation that also would include the Ridingers' disposition of another yacht, *Utopia III*, in anticipation of the completion of a third yacht that had been commissioned called *Utopia IV*—and the *Utopia III* donation was not completed until early 2020. *See* Am. Compl. at ¶ 44; *Dyamm v. Cahill*, 730 F. Supp. 1245, 1264 (S.D.N.Y. 1990) (complaint's allegations were sufficient to toll the limitations period because "the relationship it asserts is a continuous one involving professional advice about matters that are the same or related to the subject of the suit").

**B. The Amended Complaint Adequately Alleges a Claim for Fraud**

Defendants argue that Plaintiff has failed to plead fraud with sufficient particularity because she has not alleged "what purported personal benefit was received by either Attorney Stone or Attorney Gould." *See* Mot. at 10-12 ("Point III"). A personal benefit, however, is not an element of a fraud claim;[4] rather, it is but one of several ways in which a plaintiff might allege facts that give rise to a sufficient inference of intent. *See Jaufman v. Levine*, 2007 WL 2891987,

---

[4] *See, e.g., Aquino by Convergent Distributors of Texas, LLC v. Alexander Capital, LP*, 642 B.R. 106, 135 (S.D.N.Y. 2022) ("Under New York law, the elements of a cause of action for fraud are a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.") (citations omitted)).

11

*8 (N.D.N.Y. Sept. 28, 2007) ("The requisite inference of intent 'may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; **or** (4) failed to check information they had a duty to monitor.'") (internal citation omitted) (emphasis added).

Assuming arguendo that Plaintiff is even required to allege how Defendants benefited, however, here Plaintiff has done so quite unambiguously. Plaintiff alleges that Defendants' deception caused the Ridingers to part with *Utopia II* in a transaction they would not otherwise have pursued, and Plaintiff alleges that Stone and Gould orchestrated the transaction in such a manner that more than $1.1 million of the proceeds they ultimately received from selling the Yacht went to themselves or their affiliated entity, Killer Impact, instead of the donee candidate that Defendants had aggressively pitched to the Ridingers. *Id.* at ¶¶ 46–48. Those allegations are more than sufficient to satisfy Rule 9(b); to the extent Defendants suggest that a plaintiff is required to plead, for example, exactly how fraudulently obtained funds were apportioned among defendants or how defendants proceeded to use those funds, they are simply wrong. *See Bickhardt v. Ratner*, 871 F. Supp. 613, 618 (S.D.N.Y. 1994) ("To maintain an action based on fraudulent representations . . . it is sufficient to show that the defendant knowingly uttered a falsehood in intending to deprive the plaintiff of a benefit and that the plaintiff was thereby deceived and damaged.") (citations omitted)).

### C. The Court Should Disregard Defendants' "Facts" from Outside the Four Corners of the Amended Complaint

In furtherance of their arguments that the Amended Complaint should be dismissed, Defendants ask the Court to consider context outside the four corners of the Amended Complaint—including context about Killer Impact's supposed charitable purpose, how Killer

12

Impact supposedly used funds, and how *Utopia II* was supposedly used after the donation. *See, e.g.*, Mot. at 3, 4 n.1. Defendants submit that all of this context shows there was nothing improper about Defendants' conduct. However, these arguments do not bear on the sufficiency of Plaintiff's allegations and should not be considered at the dismissal stage. *See Energizer Brands, LLC v. My Battery Supplier, LLC*, 529 F. Supp. 3d 57, 61 (E.D.N.Y. 2021).

## IV. CONCLUSION

For the above reasons, Plaintiff's claims are both timely and adequately pled, and the Court therefore should deny Defendants' Motion to Dismiss the Amended Complaint.

Dated May 4, 2023

Respectfully submitted,

**MARCUS NEIMAN RASHBAUM & PINEIRO LLP**

By: /s/ Jeffrey A. Neiman

Daniel L. Rashbaum, Esq.
New York Bar No. 4002895
drashbaum@mnrlawfirm.com
Tel: 305-400-4261
Fax: 866-780-8355

One Biscayne Tower
2 S. Biscayne Blvd., Suite 2530
Miami, Florida 33131

&

Jeffrey A. Neiman, Esq.
*Admitted Pro Hac Vice*
jneiman@mnrlawfirm.com
Tel: 954-541-8281
Fax: 954-688-2492

13

Jason L. Mays, Esq.
*Admitted Pro Hac Vice*
jmays@mnrlawfirm.com
Tel: 305-434-4941
Fax: 954-688-2492

One Financial Plaza
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on May 4, 2023 via transmission of Notices of Electronic Filing generated by CM/ECF to all parties registered to receive notice in this case.

By:   /s/   Jeffrey A. Neiman
            Jeffrey A. Neiman